Fletcher, J.
This is an action of trespass. The defendant, a deputy sheriff in Vermont, having an execution against one James Long, for the purpose of satisfying it, took the stock and produce of a farm in Vermont, on which James Long lived.
The plaintiff, who is a son of James Long, brings this suit to recover the value of the property thus taken, alleging that it belonged to him, and that he was also the owner of the farm upon which the stock and produce were taken, and upon which his father, the said James Long, lived. The defendant justified on the ground, that the property taken belonged to *365 said James Long, and was rightfully taken to satisfy the execution against him, and that he was the really rightful owner of the farm, though upon the paper title it stood in the name of said John Long.
The deposition of said James Long was used in behalf of the plaintiff.
The defendant called one Haskell, for the purpose of contradicting and impeaching the testimony of said James Long, by showing that he had made statements to said Haskell, at variance with the testimony of said James in his deposition. The plaintiff asked Haskell if he had not had a quarrel with said James Long; to this question the defendant objected, but the court admitted the evidence of said Haskell, “ that he had had some difficulty with said James Long.”
The admission of this answer forms the ground of the first exception on the part of the defendant, for the reason, as alleged, that it was immaterial whether or not Haskell had had -a quarrel with James Long, the witness of the plaintiff.
But as Haskell was called to discredit James Long, and defeat the effect of his testimony, the inquiry of Haskell, whether or not he was testifying under the influence of hostile feelings toward said James Long, was not immaterial, but pertinent and proper. It had a bearing upon his credibility. A witness may well be supposed to be better inclined and more ready to impeach and discredit an enemy than a friend.
The defendant offered to show that, about the time of the conveyance of the farm upon which the produce sued for was raised, the said James Long had made fraudulent conveyances of other property, to other persons than the plaintiff, for the purpose of showing what the intentions of the father as to defrauding his creditors were, but the court rejected the evidence. This rejection is the ground of the next exception on the part of the defendant. The defendant also offered evidence of various declarations of James Long, made after the conveyance of the property to the plaintiff, while he was in possession of the property sued for, such as that, he, James, “ owned all the property on said farm ; that the plaintiff had no claim whatever to it.” The court admitted the evidence *366 for the purpose of contradicting James Long’s testimony in the case, but ruled, that the jury must not regard them as affirmative proof of title in James Long. To this ruling the defendant excepted.
The present case does not come within the principles and authorities relied upon in support of the two preceding exceptions.
If John Long had claimed under a conveyance from James Long, alleged to have been fraudulent, then the acts and declarations of James Long, the grantor and one of the parties to the alleged fraudulent conveyance, being within the principles stated in the authorities referred to, might be admissible in evidence. But John Long, the plaintiff, sets up no conveyance from James Long, and claims no title whatever to the property derived from him. The plaintiff derives his title to the property in question from sources wholly distinct from, and independent of, James Long. James Long does not appear at all in the paper title under which the plaintiff claims the real estate, and the plaintiff denies that James ever had any title to the personal estate.
There is no principle upon which the acts and sayings of James Long, a stranger to the title, and acts and sayings in the absence and without the knowledge of John Long, can be admitted to affect the title of John Long, the plaintiff. The rulings of the court, as before stated, were, therefore, correct.
The next exception taken by the defendant is, that the court erred in instructing the jury, that a fraudulent sale of the farm, to put it out of the reach of his creditors, could not be impeached except by a then creditor of James Long, and that the defendant, representing the rights of subsequent creditors, could not impeach it.
This exception does not appear to be supported in point of fact. No such instruction to the jury appears by the report to have been given. In truth, it is difficult to see how such instruction would have any application to the facts of the case. It does not appear that James Long ever made any conveyance to the plaintiff; that, at the time when the farm *367 was conveyed to the plaintiff by another person, there was any then creditor of James Long, it not appearing that he was at that time indebted to any person.
The instructions to the jury do not conflict with the doctrine, that a conveyance, fraudulent at the time of making it, might be avoided in favor of subsequent creditors, which is the doctrine supported by the authorities to which the defendant refers.
The instructions, as actually given, appear to be sufficiently favorable to the defendant, and no exception is taken to them.
It appeared by the evidence that a part of the property taken and sold by the defendant, and for which this suit was instituted, was one cow. All the property was bought by the plaintiff, by his agent, and put back on the farm, including this cow. Payment for the property thus bought in was not made at the time of the sale, though it was all delivered to the plaintiff’s agent, including the cow, and was ever after-wards held by the plaintiff.
When the agent of the plaintiff went to the defendant, to pay for the property, the defendant took the pay for the stock, except the cow, and gave the agent a bill of sale of the' stock, including the cow, which he receipted at the foot in these words : “ Received payment of the above bill of John Long, by the hands of Isaac Cummings, except for the cow which was bid off by said Cummings for said Long, at $10.55, anc said Cummings tendered me the money for said cow, Decern’ ber 18, 1846, for said Long.”
The officer had become satisfied that this cow belonged tc the plaintiff, and therefore refused to take pay for her, bui returned her without pay.
The plaintiff claimed to recover, in this suit, for the cow as well as for the other property. The defendant specified ii defence that, after the sale, the cow was returned by the de fendant to the plaintiff, and accepted by him in full of al damages, if he was entitled to any.
The court instructed the jury that, in the absence of evidence of a release, by the defendant to the plaintiff, of the amount of his bill for the cow, the measure of damages tc *368 which the plaintiff would be entitled, if any, would be the price at which the plaintiff bought said cow at said sale. To this instruction the defendant excepts.
A verdict was returned for the plaintiff, including, of course, the value of the cow. Thus the plaintiff has got his cow, and also a verdict for the value of her.
In this line of operation, the whole process will be, the plaintiff, while he has the cow in his possession, will take from the defendant, as a trespasser, the value of the cow, and then the plaintiff, as a purchaser, will pay back to the defendant, as the vendor of the cow, the same money.
The instruction, that the jury might give the plaintiff the value of his cow, notwithstanding he actually had her again, was for the reason that the defendant had not given to the plaintiff a release for the amount of his bid for her; but the defendant had in fact returned the cow, and had put in writing that he refused to receive the sum bid for her, when tendered to him, and thus expressly waived his claim to it in writing, and had put in his specification of defence that, after the sale, the cow was returned by the defendant to the plaintiff, and accepted by him in full of all damages.
What occurred between the parties before the institution of this suit, was a sufficient acquittance, by the defendant to the plaintiff, of all claim to the purchase-money, so that the plaintiff, having the cow returned, and received, and kept by him, would have no right of action for the value of the cow. The plaintiff, therefore, can have judgment on his verdict, only on condition that he remits expressly on the record the price of the cow, and takes judgment only for the balance.

Judgment accordingly.